**UNITED STATES DISTRICT COURT FOR THE**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| ANGELA WARREN, | § | |
| PLAINTIFF | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | |
| | § | |
| | § | |
| HOUSTON REFINING LP | § | |
| DEFENDANT | § | JURY TRIAL DEMANDED |

**PLAINTIFF'S COMPLAINT**

TO THE HONORABLE JUDGE OF THE UNITED STATES DISTRICT COURT FOR

THE SOUTHERN DISTRICT OF TEXAS:

COMES NOW Angela Warren, by and files this Original Complaint against

Houston Refining LP and in support of which would show the following:

## I.     NATURE OF THE CASE

1. This is a civil action brought under the federal Title VII of the Civil Rights Act of 1964

   ("Title VII") as amended by the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §

   2000e(k); for and for causes of action would show as follows:

2. Defendant terminated Plaintiff's employment in retaliation for her complaints about her

   treatment during and after her pregnancy shortly after Plaintiff returned to work after

1

her maternity leave. In terminating Plaintiff, Defendant treated her differently than other similarly situated employees that were not members of her protected class.

3. Defendant terminated Plaintiff after she complained about her disparate treatment and retaliated against Plaintiff.

4. Plaintiff seeks all damages available under Title VII, monetary damages, including back-pay wages, lost wages, liquidated damages, legal and reasonable attorney's fees and costs, penalties, and post-judgment interest.

## II. THE PARTIES

### A. Plaintiff Angela Warren

5. Angela Warren is an individual residing in Harris County Texas. She has standing to file this suit.

6. Defendant employed Angela Warren as a Representative: Security HSE II from April 6th 2020 until her termination.

### B. Defendant Houston Refining LP

7. Defendant Houston Refining LP is a Limited Partnership organized under the laws of the state of Delaware.

8. Defendant Houston Refining LP principal place of business is located at 1221 McKinney Street, Suite 700 Houston, TX 77010 USA.

9. At all times relevant Defendant is and has conducted business in the State of Texas.

10. At all time relevant, Defendant was an employer of Plaintiff. *See* 29 U.S.C. § 203(d).

2

11. Defendant may be served through its registered agent, C T Corporation Systems 1999 Bryan St ste. 900 Dallas Tx 75201

### III. JURISDICTION AND VENUE

12. This Court has subject matter jurisdiction because Plaintiff is asserting claims arising under federal law. Specifically, she is asserting claims arising under Title VII, as amended by the Pregnancy Discrimination Act, and the ADAAA. This Court, therefore, has jurisdiction pursuant to 28 U.S.C. § 1331.

13. Plaintiff has completed all conditions precedent to filing this suit. She received a notice of right to sue letter from the Equal Employment Opportunity Commission fewer than ninety days before filing this suit.

14. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as Defendant is a company doing business in the state in which this District is located. Additionally, the acts complained hereof were committed and had their principal effects against Plaintiff within this district affording both general and specific jurisdiction.

### IV. FACTUAL BACKGROUND

15. Plaintiff Warren repeats and realleges all the preceding paragraphs of this Complaint as if fully set forth in this section.

16. At all material times, Plaintiff Warren has been entitled to the rights, protections, and benefits provided under Title VII.

17. Defendants employed Plaintiff as a Representative: Security HSE II from on or about April 6th 2020 until her termination on August 25th 2024.

18. Warren was a dedicated and respected member of the team at Houston Refining LP.

19. Warren had good reviews while working at Houston Refining LP prior to her decision to become pregnant.

20. Warren was one of the first women hired for her role at Houston Refining LP.

21. In summer 2021 Ms. Warren told her boss, Edward Israel, of her decision to begin attempting to become pregnant via IVF and told him that she may require accommodation because of the difficulty of IVF.

22. In May of 2022, Warren was successful in her attempts to become pregnant. At this time, she was still working at Houston Refining LP without issue.

23. Warren's pregnancy was a difficult one; she endured extreme swelling, pain, difficulty walking, sleeping, and eating. Despite this, she continued to work regularly, and it was during this time that her boss, Israel, began a campaign to undermine and ultimately terminate her.

24. During Warren's pregnancy, on approximately October 11th, 2022, Warren locked the administration parking lot gate behind her when she exited it. Despite this, Mr. Israel wrote her up for the gate being unlocked.

25. Israel further accused Warren of taking too long to rest after daily safety meetings. He alleged that these meetings were only 15 minutes long and that it sometimes took Warren an hour to begin work. In fact, these meetings routinely took 45 minutes to an hour, and Warren was required to stay through the meetings.

26. Two days before Ms. Warren's planned maternity leave, Ms. Warren, Mr. Israel, and Aesha Teel of H.R. met to discuss the issues with Ms. Warren's pregnancy-related

performance issue.  This was the first time she was offered accommodation for her pregnancy-related job complications.

27. On May 30, 2023, Ms. Warren returned to work after taking all of her leave and delivering two healthy twins.

28. Immediately upon her return, Mr. Israel resumed his campaign to terminate her employment.

29. Mr. Israel wrote Ms. Warren up for unbuckling her seat belt while parked at a gate so that she could reach out of her company vehicle and touch her badge to the reader because she was too short to reach otherwise.

30. That same evening Ms. Warren was on patrol when a coworker asked her what Mr. Israel was doing at gate three.  Ms. Warren followed up and found the gate unlocked after she had previously locked it.  She then went to the security operations center to review the footage and saw Mr. Israel unlocking the gate behind her after she had previously locked it.

31. He continued his allegations that she spent 30 minutes after the 15-minute pre-shift meeting in the " SOC building" despite those meetings routinely running well into 45 minutes long.

32. In early June 2023, Ms. Warren met with an H.R. representative to discuss her 2022 performance review. That performance review had been focused solely on her performance while pregnant and that Ms. Warren needed improvement, and the issues cited were primarily related to her pregnancy-related complications. Ms. Warren was

told that there was nothing that could be done to change the review as it had happened so far in the past.

33. In July 2023, Ms. Warren met with Ms. Teel to discuss her fears that Mr. Israel was targeting her for termination because of her pregnancy and gender. Ms. Teel shared with Ms. Warren that Mr. Israel had attempted to terminate Ms. Warren prior to her maternity leave but had been refused because Ms. Warren had not violated any policies or procedures.

34. On August 25, 2023, while Ms. Warren was working her shift, a thief was spotted on the property Ms. Warren's unit was hired to guard. She and her partner gave chase. The thief was seen jumping over the property fence and running towards an adjacent road. Ms. Warren and her partner pulled up behind the thief and ordered him to stop and get on the ground. The thief did so once he was in that position; for her safety, Ms. Warren placed him in cuffs. She double-checked the cuffs for fit, and then she and her partner assisted the thief onto the tailgate of their vehicle so that he could sit comfortably as they awaited the arrival of law enforcement.

35. Houston Refining LP then fired Ms. Warren for these actions. They claim that in pursuing a suspect and apprehending him without struggle using handcuffs that she purchased, she violated company policy.

36. These reasons are pure pretext. Security officers at Houston Refining LP are not issued handcuffs. In fact, it is customary in the security industry for officers to purchase their own handcuffs, which is exactly what Ms. Warren had done in her previous positions in the field.

37. Further, in training drills regularly conducted by Houston Refining LP, Ms. Warren, and her co-workers had practiced taking suspects into custody and awaiting law enforcement, which is precisely what Ms. Warren did on August 25 2023.

38. Other employees who had taken previous suspects into custody were not disciplined. The former head of security, who had apprehended a suspect with a chokehold, was not subject to discipline for his actions.

39. Other employees who had been caught sleeping on the job and were not terminated or even given a rating of "needs improvement" on their performance review.

40. Ms. Warren was subject to disparate treatment because of her gender, and when she complained about it, she was terminated in retaliation.

## IV.   CAUSE OF ACTION: SEX DISCRIMINATION IN VIOLATION OF TITLE VII AS AMENDED BY THE PDA

41. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

42. Plaintiff was pregnant during Defendant's adverse actions against her employment and was within six months of childbirth when she was terminated.

43. Plaintiff was qualified for her position and other positions with Defendant.

44. The Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*.

## V. CAUSE OF ACTION: RETALIATION IN VIOLATION OF TITLE VII AS AMENDED BY THE PDA

45. Plaintiff adopts and incorporates herein by reference all preceding paragraphs.

46. The Defendant terminated the Plaintiffs in retaliation for her complaints about gender-based discrimination in the workplace.

47. The Defendant's conduct violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq*

## VI. DAMAGES

48. As a result of Defendant's unlawful conduct, Plaintiff seeks relief which includes, but is not limited to, back pay; front pay; benefits in the past and the future; costs, expert witness fees, litigation expenses, and attorneys' fees; damages for any tax penalties incurred for receiving wages pursuant to a lump-sum award; and pre-judgment and post-judgment interest as allowed by law.

## VII. COMPENSATORY DAMAGES

49. Plaintiff additionally brings suit for compensatory damages (past and future), including damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses.

## VIII. PUNITIVE DAMAGES

50. The conduct committed by Defendant against Plaintiff is the type of conduct demonstrating malice or reckless indifference to the rights of the Plaintiff. Therefore, Plaintiff additionally brings suit for punitive damages.

## IX.    ATTORNEYS' FEES AND EXPERT FEES

51. A prevailing party may recover reasonable attorneys' and experts' fees. 42 U.S.C. § 2000e-5(k). Plaintiff seeks all reasonable and necessary attorneys' fees in this case, including preparation and trial of this lawsuit, post-trial, pre-appeal legal services, and any appeals. Plaintiff additionally brings suit for expert fees.

## X.    DEMAND FOR JURY TRIAL

52. Plaintiff has demanded a trial by jury of all the issues in this case.

## XI.    PRAYER FOR RELIEF

53. WHEREFORE, cause having been shown, Plaintiff prays for, on trial of this just cause, judgment against Defendant as follows:

    a.  A declaration that the acts and practices complained of in this Complaint are in violation of Title VII, as amended;

    b.  All actual damages, including but not limited to back pay and benefits;

c.  Compensatory damages (past and future), including but not limited to damages for future pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other nonpecuniary losses, as allowed by law;

d.  Damages for any tax penalties incurred for receiving wages pursuant to a lump-sum award;

e.  Punitive damages;

f.  Pre-judgment and post-judgment interest as allowed by law;

g.  Court costs, expert witness fees, and litigation expenses;

h.  Equitable relief, including front pay;

i.  Attorneys' fees, both for this cause and for any and all appeals as may be necessary; and

j.  Any such further relief as the Court deems proper and just under the circumstances

Respectfully Submitted,
Franzoni, Nelson, & Robinett, PLLC

By:  /s/Erik Nelson_____
Erik Nelson
Texas Bar No. 24069015
Federal Court No. 3633010
erik@fnr.law
25329 Budde Road, Ste. 704

The Woodlands, Texas
77380
Telephone: (281) 459-0701
Facsimile: (888) 861-1304

**Attorney for Plaintiff**

11